IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SDC FINANCIAL, LLC and SMILEDIRECTCLUB, LLC,<br><br>Plaintiffs,<br>v.<br><br>MARTIN BREMER, SMILE STORE, LLC, SMILE STORE SUPPORT SERVICES, LLC, and MH, D.M.D. OF TENNESSEE, PLLC,<br><br>Defendants. | Civil Action No. 3:19-cv-0525<br><br>Chief Aleta A. Trauger |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS COUNTS III AND V-X OF PLAINTIFFS' COMPLAINT**

## INTRODUCTION

This action is but one in a campaign of several in which Plaintiffs seek to intimidate and harass their nascent competition with meritless claims of inducing breaches of unseen, unrevealed agreements with a party that is not present in the lawsuit. Defendants Martin Bremer, Smile Store, LLC ("Smile Store"), Smile Store Support Services, LLC ("Smile Support") and MH, D.M.D. of Tennessee, PLLC ("MH") (Bremer, Smile Store, Smile Support, and MH collectively referred to as "Defendants") have opened a single store called "Smilestore" in the Green Hills Mall. Other than the fact that Smilestore is located in a mall, it is otherwise a traditional dental business offering the services of an orthodontist to straighten teeth. MH D.M.D. is a professional limited liability corporation that is owned by a licensed orthodontist, Dr. Miriam Hall, and is staffed by a licensed dentist, Dr. Alicia Gordon. Dr. Gordon works on-

site at Smilestore and treats patients on a daily basis. Defendant Martin Bremer is an officer of Smile Support, which provides administrative services to MH D.M.D. When appropriate, Dr. Gordon prescribes Invisalign products to her patients and purchases them from a company called Align.

Marty Bremer, Smile Support, and MH D.M.D. state as follows in Support of their Motion to Dismiss Counts III and V-X of Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6):

- Plaintiffs cannot state a claim under the Tennessee Trademark Dilution Act (Count III) because their SMILESHOP mark is not famous;
- For trade secret misappropriation (Counts V and VI), a person's remembered information and relationships are not protected information;
- Plaintiffs' claims for procurement/inducement of breach of contract (Counts VII and VIII), intentional interference with existing/prospective business relationships (Count IX), and unjust enrichment (Count X) are preempted by the Tennessee Uniform Trade Secret Act ("TUTSA");
- Plaintiffs' procurement of breach of contract and intentional interference with existing business relationship claims fail to state a claim and are contradicted by Plaintiffs' own allegations; and
- Plaintiffs' claims for unjust enrichment (Count X) fail as a matter of law because Plaintiffs did not willingly confer any benefits to Defendants.

Finally, as numerous of Plaintiffs' claims in this action are directed at the allegedly improper actions and breaches of contract by Plaintiffs' former member, Align Technology, Inc.

("Align"), Counts III and V-X should be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) and 19 for Plaintiffs' failure to join Align as an indispensable party.

## FACTS AS ALLEGED IN THE COMPLAINT[1]

Plaintiffs sell clear orthodontic aligners in the direct-to-consumer ("DTC") market. (Complaint, ¶ 2). As part of its DTC sales to consumers, in May 2016, Plaintiffs opened a SMILESHOP retail store in Nashville, Tennessee. (*Id.*, ¶ 5). In July 2016, Align became a member of Plaintiff SmileDirectClub, LLC ("SDC") and became the exclusive third-party supplier of aligners to Plaintiffs. (*Id.*, ¶ 25). At the time Align became a member of SDC, Defendant Bremer worked for Align as its Global Process Owner (Plan-to-Make). (*Id.*, ¶ 29). As part of his employment with Align, Bremer worked with Plaintiffs to develop the manufacturing process that Align used to fulfill Plaintiffs' aligner orders. (*Id.*). In May 2017, after Align asked him to relocate to San Jose, Bremer left his employment and formed Smile Store, which along with Smile Store Support Services, LLC and MH DMD of TN, PLLC, operate a single orthodontic office under the SMILESTORE mark at the Green Hills Mall in Nashville, Tennessee. (*Id.*, ¶ 32-33).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires that a plaintiff provide enough facts to state a claim for relief that is plausible on its face. To survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff must therefore "allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its fac[e].'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

---

[1] Defendants accept these facts as true for the purpose of this motion only.

suffice." *Steele v. Edwards*, No. 3:15-CV-00818, 2016 WL 7325333, at *1 (M.D. Tenn. Dec. 16, 2016). A plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels or conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted). Although the Court must accept as true all factual allegations made in the Complaint, it "need not accept as a true legal conclusions or unwarranted factual inferences." *Koffmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). Applying these standards to the case at bar, all of Plaintiffs' non-trademark infringement claims must be dismissed.

## ARGUMENT

### I. COUNT III SHOULD BE DISMISSED AS PLAINTIFFS' MARK IS NOT FAMOUS

In Count III, Plaintiffs allege claims under the Tennessee Trademark Dilution Act, Tenn. Code Ann. § 47-25-513, which provides:

> (a) The owner of a mark which is famous in this state shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this section. In determining whether a mark is distinctive and famous, a court may consider factors including, but not limited to:
>
> (1) The degree of inherent or acquired distinctiveness of the mark in this state;
>
> (2) The duration and extent of use of the mark in connection with the goods and services with which the mark is used;
>
> (3) The duration and extent of advertising and publicity of the mark in this state;
>
> (4) The geographical extent of the trading area in which the mark is used;

(5) The channels of trade for the goods or services with which the mark is used;

(6) The degree of recognition of the mark in the trading areas and channels of trade in this state used by the mark's owner and the person against whom the injunction is sought;

(7) The nature and extent of use of the same or similar mark by third parties; and

(8) Whether the mark is the subject of a state registration in this state, or a federal registration under the Act of March 3, 1881, or under the Act of February 20, 1905, or on the principal register.

While no Tennessee state court has interpreted the factors set forth in Section 513(a)(1)-(7), because "Tennessee and federal dilution statutes are very similar," federal courts have treated the analysis the same. *AutoZone, Inc. v. Tandy Corp.*, 174 F. Supp. 2d 718, 734 (M.D. Tenn. 2001), *aff'd*, 373 F.3d 786 (6th Cir. 2004).

A plaintiff asserting a trademark dilution claim faces a difficult challenge because "the bar for fame is high and that it is widely recognized that a party must make much more than a showing of secondary meaning to pursue a claim of trademark dilution." *Moore v. Weinstein Co., LLC*, No. 3:09-CV-00166, 2012 WL 1884758, at *43 (M.D. Tenn. May 23, 2012), *aff'd*, 545 F. App'x 405 (6th Cir. 2013). Generally, only marks that carry "a substantial degree of fame, such as 'Dupont' or 'Buick' or 'Kodak,' which are 'highly distinctive, arbitrary or fanciful marks'" qualify as famous. *TCPIP Holding Co., Inc. v. Harr Comm., Inc.*, 244 F.3d 88, 100–101 (2nd Cir. 2001); *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999)("to meet the 'famousness' element of protection under the dilution statutes, 'a mark [must] be truly prominent and renowned")(quoting *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 46 (1st Cir.1998)). More significantly, "where the marks at issue are not identical, the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to

establish actionable dilution." *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003). Further, when a plaintiff's trademark dilution claims make nothing more than "conclusory allegations [their claims] cannot survive a motion to dismiss." *Pearson Educ., Inc. v. C&N Logistics, Inc.*, No. 3:18-CV-00438, 2018 WL 6528128, at *4 (M.D. Tenn. Dec. 12, 2018).

Here, Plaintiffs have failed to sufficiently allege that their SMILESHOP mark is famous. Instead, Plaintiffs have made the bald assertions that the SMILESHOP mark, despite being in use for less than three years and only being used at a single location in Nashville, "is highly distinctive and famous in the State of Tennessee." (Complaint, ¶ 57). On its face the SMILESHOP mark falls far short of being highly distinctive, arbitrary, or fanciful and, at best, is suggestive of a store (or shop) where someone can have their smile improved. Consequently, there is no legitimate basis for Plaintiffs' specious claims that the SMILESHOP mark is both famous and highly distinctive. Further, as Defendants' SMILESTORE mark is not *identical* to the SMILESHOP mark, Plaintiffs' allegations are "not sufficient to establish actionable dilution." *Moseley*, 537 U.S. at 433. Accordingly, Plaintiffs' claims for trademark dilution should be dismissed.

## II. COUNTS V AND VI MUST BE DISMISSED AS INFORMATION REMEMBERED BY BREMER AND HIS RELATIONSHIPS WITH SDC EMPLOYEES ARE NOT TRADE SECRETS

In Counts V and VI, Plaintiffs allege causes of action for trade secret misappropriation under the TUTSA and Federal Defend Trade Secrets Act ("FDTSA"), respectively. The basis for Plaintiffs' trade secret misappropriation claims are that Defendant Bremer, while working for Align, met with Plaintiffs' personnel and learned about Plaintiffs' business. Specifically, Plaintiffs allege that:

6

- "Bremer attended weekly calls with SDC employees, travelled to San Jose to meet the SDC team, and participated in the design and testing of the technical specifications required for Align's manufacturing of SDC's aligners" (Complaint, ¶ 4);
- Bremer "learned the ins and outs and multitude of benefits of running a retail store in connection with the sale of clear aligner therapy" (*Id.*);
- Bremer "learned SDC's process – from the moment a consumer makes an appointment at a SMILESHOP retail store, through submission of an order, to the delivery of the aligners" (*Id.,* ¶ 29);
- "Bremer spent time learning about the SDC/Align software portal" (*Id.*, ¶ 30);
- "Bremer built a relationship with SDC and many of its employees" (*Id.*, ¶ 31);
- "Bremer received the benefit of learning the inner workings of SDC's business-including its workflows-through observation and regular communication with SDC employees." (*Id.*, ¶ 108).

In their Complaint, Plaintiffs do not allege that Bremer improperly accessed any of Plaintiffs confidential information. Similarly, Plaintiffs do not allege or attach a nondisclosure or other confidentiality agreement signed by Bremer prior to his work with Plaintiffs. Putting aside whether any of the information claimed by Plaintiffs qualifies as a trade secret under either the TUTSA or FDTSA, it is clear that Plaintiffs' allegations of trade secret misappropriation fail as a matter of law because an individual's "'remembered information' and relationships with customers are not trade secrets." *PartyLite Gifts, Inc. v. Swiss Colony Occasions*, 246 F. App'x 969, 973 (6th Cir. 2007); *B & L Corp. v. Thomas & Thorngren, Inc.,* 162 S.W.3d 189, 215 (Tenn. Ct. App. 2004)("the following types of information are not confidential: (1) Remembered

information as to a business's prices; (2) The specific needs and business habits of certain customers; and (3) An employee's personality and the relationships which he has established with certain customers").

Here, as Plaintiffs have repeatedly stated, all of the information allegedly misappropriated by Bremer was information he *learned* and as the result of *relationships* he built with people at SDC. Accordingly, Plaintiffs claims for trade secret misappropriation against Bremer, and by extension Smile Store, Smile Store Support Services, and MH DMD of TN, should be dismissed.

### III. PLAINTIFFS' CLAIMS FOR PROCUREMENT OF BREACH OF CONTRACT, INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS, AND UNJUST UNENRICHMENT ARE PREEMPTED BY TUTSA

Under the TUTSA, other causes of action are preempted if "proof of those causes of action, in whole or in part, would constitute misappropriation of a trade secret." *Wachter, Inc. v. Cabling Innovations, LLC*, No. 3:18-cv-00488, 2019 WL 2011048, *11 (M.D. Tenn. May 7, 2019) *quoting Vincit Enters., Inc. v. Zimmerman*, No. 1:06-CV-57, 2006 WL 1319515, *7 (E.D. Tenn. May 12, 2006); *see also* Tenn. Code Ann. § 47-25-1708(a)("this part displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret"). In determining the scope of the preemption under the TUTSA, courts have applied the "same proof" standard. *Watcher, Inc.*, 2019 WL 2011048 at *11. Under the "same proof" standard, "if proof of a non-[T]UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it." *Id.* quoting *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 658 (E.D. Tenn. 2004). Consequently, "the [T]UTSA's preemption provision has generally been interpreted to abolish all free-standing alternative causes of action for theft or

8

misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status (e.g., idea misappropriation, information piracy, theft of commercial information, etc.)." *Wachter, Inc.*, 2019 WL 2011048 at *11 quoting *Hauck*, 375 F. Supp. 2d at 655.

In *Wachter, Inc.* this Court found that claims by a data network infrastructure company against its former employees and a competitor for tortious interference with business relationship and unjust enrichment were preempted by TUTSA. 2019 WL 2011048, *10-13. In finding the causes of action to be preempted, the Court reviewed the totality of the plaintiffs' allegations to determine that the "gravamen" of plaintiff's claim "rests on the appropriation of confidential information that would be considered a 'trade secret' under the TUTSA." *Id*. at *12; *see also Hauck*, 375 F.3d Supp.2d at 658 ("[P]laintiffs alleging theft or misuse of their ideas, date, or other commercially valuable information are confined to a single cause of action provided by the [T]UTSA").

Here, the "gravamen" of Plaintiffs' claims for procurement/inducement of breach of contract (Counts VII and VIII), intentional interference with existing/prospective business relationships (Count IX), and unjust enrichment (Count X) is that Defendant Bremer misappropriated Plaintiffs' trade secrets, thus allowing Defendants to interfere with Plaintiffs' contractual relationships with Align when Align improperly supplied aligners to Defendants. For instance, Plaintiffs allege that "Bremer – who has no experience in the direct-to-consumer clear aligner market prior to his interactions with SDC – misappropriated SDC's trade secrets and confidential information *to create and operate* his infringing SMILESTORE retail store." (Complaint, ¶ 6)(emphasis added). Further, with respect to their unjust enrichment claims, Plaintiffs allege that "Defendants accepted the benefit of the [confidential] information by using

9

it as a *blueprint* to create Smile Store and *operate* Smile Store's website and the SMILESTORE retail store." (Complaint, ¶ 110)(emphasis added).

When the totality of Plaintiffs' allegations are reviewed, it is clear that "the gravamen of Plaintiff's [procurement/inducement of breach of contract claims,] tortious interference claim [and unjust enrichment claims] rest…on the appropriation of confidential information that would be considered a 'trade secret' under the TUTSA." *Wachter, Inc.*, 2019 WL 2011048, at *12. Because the proof for Plaintiffs' claims in Counts VII-X would also require proving misappropriation of Plaintiffs' trade secrets, these claims are preempted by the TUTSA and should be dismissed.

### IV. PLAINTIFFS' CLAIMS FOR PROCUREMENT OF BREACH OF CONTRACT AND INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS ARE CONTRADICTED BY THEIR OWN ALLEGATIONS

#### A. From Their Own Allegations, It Is Clear That Defendants Do Not Operate On A DTC Model Or Otherwise Substantially Similar To Plaintiffs

In their Complaint, Plaintiffs allege that Defendants operate a "on a direct-to-consumer or 'DTC' model." (Complaint, ¶ 36). Consequently, since Align is purportedly prohibited by its Operating Agreements and Supply Agreement with Plaintiffs from selling to other DTC stores, Plaintiffs claim Defendants have caused Align to breach and/or interfered with Plaintiffs' contractual relationships with Align. Unfortunately for Plaintiffs, the allegations of their own Complaint clearly show that Defendants do *not* operate on a DTC model, but instead function as a traditional orthodontic delivery model, i.e. patients come to an orthodontist's office for an exam, prescription, and follow-up visits. While Defendants incorporate the latest technologies to offer patients the best service, they do not operate a DTC store nor operate in a substantially

similar way to Plaintiffs. The fact that Defendants do not operate on a DTC model is apparent throughout Plaintiffs' Complaint.

Courts need not accept as true "factual assertions that are contradicted by the complaint itself, by documents upon which the pleadings rely, or by facts of which the court may take judicial notice." *Perry v. NYSARC, Inc.*, 424 Fed. Appx. 23, 25 (2nd Cir .2011). Because Plaintiffs' allegations that Defendants operate on a direct to consumer model are contradicted by the complaint's exhibits, these allegations need not be taken as true and thus fail to state a plausible claim under *Twombly*.

First, Plaintiffs attach as exhibits[2] portions of Smile Stores' website that explicitly state that "[e]stablishing a relationship with your *doctor* at SMILE STORE is the best way to achieve the smile you are seeking. That's why each SMILE STORE has an *on-site doctor*…" (Complaint, Ex. A, PageID#32)(emphasis added). Similarly, Plaintiffs include information from Defendants' website about how the Smile Store process works which states that a customer will need to "[m]ake an appointment with your *local* SMILE STORE *doctor* when it's convenient for you. Begin wearing your aligners as directed by your *doctor*." (Complaint, Ex. C, PageID#37) (emphasis added). Plaintiffs also include statements from Defendants' website that "[t]hroughout your treatment, consult with our *on-site doctor* for professional oversight about your plan, your kit, your teeth, or any problems." *Id.*, PageID#38 (emphasis added). Unlike Plaintiffs, which function using remote orthodontists on a DTC model, the attachments to Plaintiffs' Complaint make clear that Defendants operate as a traditional on-site, in-person orthodontist practice.

---

[2] Generally when there is a conflict between the allegations of the complaint and the exhibits attached thereto, the exhibits prevail. *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) citing 2A Moore's Federal Practice, ¶ 10.06, p. 10–24.

11

In addition, the very parties to this action reflect that the Smile Store has an on-site doctor. Defendant MH, D.M.D. of Tennessee, PLLC is a Tennessee <u>professional</u> limited liability company. While Plaintiffs correctly state the corporate name MH, D.M.D. of Tennessee, PLLC, in their allegations Plaintiffs conspicuously omitted MH's status as a professional limited liability company and instead allege that MH, D.M.D. of Tennessee, PLLC "is a Tennessee member-managed limited liability company." (Complaint, ¶ 14). The import of MH being a Tennessee professional limited liability company is apparent because, under Tennessee law, a PLLC can only be formed by licensed professionals to provide specified professional services. *See* Tenn. Code Ann. § 48-248-101, *et seq*. And, in fact, it is owned by Dr. Miriam Hall, a licensed orthodontist and employs Dr. Alicia Gordon, a licensed dentist, who works on site every day at Smilestore. By naming MH, Plaintiffs have named Smile Store's on-site doctor as a party to this action further undermining their specious allegations that Defendants operate on a DTC model or in a substantially similar fashion to Plaintiffs' business.

Because Plaintiffs' allegations that Defendants operate on a DTC model or in a substantially similar fashion to Plaintiff's DTC operations are directly refuted by their own Complaint, there is no legitimate or plausible basis for Plaintiffs' claims that Align has breached the Operating Agreements and Supply Agreement by selling aligners to Defendants. Consequently, Counts VII-IX fail to state a claim and should be dismissed with prejudice.

### B. Plaintiffs' Allegations Demonstrate That Defendants Did Not Know Of The Operating Agreements And Supply Agreement When They Began Operating Their Store

In their Complaint, Plaintiffs baldly allege that Defendants knew of the Operating Agreements and the Supply Agreement (collectively, the "Agreements") when they opened their store. (Complaint, ¶¶ 82, 92). Putting aside whether Defendant Bremer, who was not an officer

12

or director of Align, was even aware the Agreements existed or and whether his knowledge can be imputed to all Defendants, Plaintiffs' own statements make clear that none of the Defendants had knowledge of the alleged contractual restrictions on Align selling aligners to Defendants. Significantly, in their own cease and desist letter Plaintiffs state they are aware Defendants will "be selling Invisalign® clear aligner products," but do not make any reference to the existence of the Agreements or any restrictions on Align. (Complaint, Ex. D, PageID#40). In fact, despite stating their knowledge of Defendants' plans to sell Align's products, Plaintiffs explicitly stated that "SmileDirectClub does not object to your intent to launch a competing store." *Id*. These statements within the Complaint destroy Plaintiffs' claims for intentional interference with contract and procurement of breach of contract.

Under Tennessee law, in order to establish a claim for intentional interference with contract, "a plaintiff must establish that: (1) a legal contract existed; (2) the wrongdoer knew of the contract's existence; (3) the wrongdoer intended to induce a breach of that contract; (4) the wrongdoer acted maliciously; (5) the contract was actually breached; (6) the act complained of was the proximate cause of the breach; and (7) damages resulted from the breach." *Pearson Educ., Inc. v. C&N Logistics, Inc.*, No. 3:18-CV-00438, 2018 WL 6528128, at *6 (M.D. Tenn. Dec. 12, 2018) quoting *Jones v. LeMoyne-Owen Coll.*, 308 S.W.3d 894, 908 (Tenn. Ct. App. 2009)(emphasis added). Similarly, "[t]he elements of a cause of action for procurement of the breach of a contract are: 1) there must be a legal contract; 2) the wrongdoer must have knowledge of the existence of the contract; 3) there must be an intention to induce its breach; 4) the wrongdoer must have acted maliciously; 5) there must be a breach of the contract; 6) the act complained of must be the proximate cause of the breach of the contract; and, 7) there must have

13

been damages resulting from the breach of the contract." *Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 158 (Tenn. Ct. App. 1997).

By Plaintiffs' own statements to Defendants that they did not object to Defendants opening a competing business selling Align's products, Plaintiffs cannot establish that Defendants knew of the restrictions on Align or intended to induce Align to breach those restrictions. In fact, Plaintiffs' own exhibited letter establishes it granted permission or at least acquiesced to allow the very conduct it is now suing over—Defendants' operation of a competitive business selling Invisalign products. Because Defendants' allegations are contradictory, this Court is not required to accept them as true. Accordingly, Plaintiffs cannot establish a plausible claim that Defendants knew they were inducing a breach of contract. Accordingly, Counts VII-IX should be dismissed with prejudice.

### V. BECAUSE PLAINTIFFS HAVE NOT WILLINGLY CONFERRED A BENEFIT ON DEFENDANTS, THEIR CLAIMS FOR UNJUST ENRICHMENT FAIL AS A MATTER OF LAW

In Count X, Plaintiffs allege that Defendants have been unjustly enriched by the knowledge Bremer learned through his work with SDC while he was employed by Align. While, as discussed above, this claim is preempted by the TUTSA, Plaintiffs' unjust enrichment claim also fails under Tennessee law.

In Tennessee, unjust enrichment is a "[q]uasi-contractual theory of recovery [which] involves *the willing conferring of a benefit by one party* to the other and is contraindicated when the benefit alleged is involuntarily conferred." *Watcher, Inc.,* 2019 WL 2011048 at *13 *quoting* *B&L Corp.*, 162 S.W.2d at 217-218 (emphasis in original).

14

Here, the entire gist of Plaintiffs' Complaint is that they did not *willingly* confer the benefit of their business model and operations on Defendants. Accordingly, their unjust enrichment claim fails as a matter of law.

VI. **PLAINTIFFS' NON-TRADEMARK CLAIMS SHOULD BE DISMISSED FOR FAILURE TO NAME AN INDISPENSABLE PARTY**

Pursuant to F.R.C.P. 12(b), "a party may assert the following defenses by motion:…(7) failure to join a party under Rule 19." F.R.C.P. 19, in pertinent part, states:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> ***
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest;

Here, based upon Plaintiffs' allegations, Align is an indispensable party whose absence will impede and impair Align's ability to protect its interest. Throughout their Complaint, Plaintiffs allege that the Operating Agreements and the Supply Agreement severely restrict the entities and customers to which Align can sell its aligners. Plaintiffs repeatedly allege that Align, by supplying aligners to Defendants, who operate a traditional on-site, in-person orthodontist practice, have breached the Operating Agreements and Supply Agreement. Plaintiffs selectively reveal only two brief provisions of these agreements, to which none of the Defendants are a party, while failing to provide the vast majority of their contents. While Plaintiffs' failure to provide the Court or Defendants with copies of these agreements not only prevents determining the veracity or viability of Plaintiffs' claims, if the Court ultimately determines that Align has breached the agreements, that finding will significantly impair, if not

15

destroy, Align's interests. It is difficult to imagine any market available to Align for the sale of its aligners if Align's sales to Defendants' licensed orthodontist and on-site dentist are deemed to be a breach of the Operating Agreements and Supply Agreement. Accordingly, if Plaintiffs are permitted to proceed on their claims and succeed, they have gutted Align's market and successfully stifled their most significant competition, without Align being present to defend itself and its interests. Align's absence in this matter will severely impair its interests such that Align is an indispensable party under F.R.C.P. 19 and Counts III and V-X of Plaintiffs' Complaint should be dismissed pursuant to F.R.C.P. 12(b)(7).

## CONCLUSION

For the foregoing reasons, Counts III and V-X of Plaintiffs' Complaint should be dismissed with prejudice.

Respectfully submitted,

/s/ Paige W. Mills
Paige W. Mills #016218
Ryan A. Lee #031937
Bass, Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615) 742-6200
pmills@bassberry.com
ryan.lee@bassberry.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 1, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following:

| | |
|---|---|
| George H. Cate, III | James D. Dasso |
| R. Brandon Bundren | Lauren M. Loew |
| BRADLEY ARANT BOULT CUMMINGS LLP | Susan Poll-Klaessy |
| 1600 Division Street, Suite 700 | FOLEY & LARDNER |
| Nashville, TN 37203 | 321 N Clark Street, Suite 2800 |
| gcate@bradley.com | Chicago, IL 60654-5313 |
| bbundren@bradley.com | jdasso@foley.com |
| | lloew@foley.com |
| | spollklaessy@foley.com |

*Attorneys for Plaintiffs*

                                        */s/ Paige W. Mills*

17

Case 3:19-cv-00525   Document 23   Filed 08/01/19   Page 17 of 17 PageID #: 103