IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SDC FINANCIAL, LLC and SMILEDIRECTCLUB, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 3:19-cv-00525 |
| MARTIN BREMER, SMILE STORE, LLC, MH, D.M.D. of TENNESSEE, PLLC, and SMILE STORE SUPPORT SERVICES, LLC, | ) ) ) ) ) | Judge Aleta A. Trauger |
| Defendants. | ) ) | |

## SDC'S RESPONSE TO MOTION TO DISMISS

George H. Cate, III (BPR No. 012595)
R. Brandon Bundren (BPR No. 030985)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street
Nashville, TN 37203
Tel: (615) 244-2582
Fax: (615) 252-6347
gcate@bradley.com
bbundren@bradley.com

James D. Dasso, *Pro Hac Vice* Admitted
Susan Poll Klaessy, *Pro Hac Vice* Admitted
FOLEY & LARDNER LLP
321 North Clark Street
Chicago, IL 60654-5313
Telephone: (312) 832-4500
jdasso@foley.com
spollklaessy@foley.com

*Attorneys for Plaintiffs SDC Financial, LLC
and SmileDirectClub, LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND .................................................................................. 3

    SDC's SMILESHOP Trademark & Confidential Information ........................... 3

    The SDC-Align Relationship ........................................................................... 4

    Bremer's History with SDC and Align .............................................................. 4

    Bremer's SmileStore ........................................................................................ 4

ARGUMENT ...................................................................................................... 5

I.    SDC Has Properly Pled A Claim For Trademark Dilution (Count III). ............ 5

    A.    SDC Has Properly Pled Fame in Tennessee. ....................................... 5

    B.    The Court Should Not Decide the Fact-Intensive Inquiry of Fame on a Motion to Dismiss. ......................................................................... 7

II.    SDC Has Properly Pled Claims for Misappropriation of Trade Secrets (Counts V and VI). ............................................................................................ 8

    A.    SDC Sufficiently Pled Misappropriation of Trade Secrets. ................... 8

    B.    Determining Whether Bremer Relied on Remembered Information Is Not Proper At This Stage. ................................................................... 9

    C.    "Remembered Information" Based on Materials that Constitute Trade Secrets is Protectable. ......................................................................... 9

III.    SDC Has Properly Pled Inducement of Breach of Contract (Counts VI and VII) and Interference with Business Relationships (Count IX). ............................. 10

    A.    The TUTSA Does Not Preempt SDC's Claims. .................................... 10

    B.    SDC Proper Alleges that SmileStore is a DTC Company and Provides Substantially Similar Services. .............................................................. 11

    C.    SDC Sufficiently Pled the Smile Store Group Knew of the Operating Agreements and Supply Agreement. ................................................... 13

    D.    SDC's 2018 Letter Did Not Give Bremer Permission to Interfere with SDC's Agreements with Align. ........................................................... 13

i

IV.     SDC Has Properly Pled A Claim for Unjust Enrichment (Count X)................................ 14

       A.       SDC'S Unjust Enrichment Claim is a Quasi Contractual Claim Excluded from Preemption. ................................................................................................... 14

       B.       SDC Willingly Gave Bremer a Benefit. ............................................................. 15

V.      The Court Should Not Dismiss The Complaint Under Fed. R. Civ. P. 19. ...................... 16

       A.       Align is Not A Required Party Under Fed. R. Civ. P. 19(a)................................ 16

       B.       Because Joinder is Not Feasible, The Court Should Not Dismiss The Claims Against The Smile Store Group Even If Align is a Required Party. ........ 18

CONCLUSION ........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Travel Related Serv., Co., Inc. v. Bank One-Dearborn, N.A.*,
  2006 WL 2457067 (6th Cir. Aug. 24, 2006) ........................................................................17

*Am. Nat. Prop. & Cas. Co. v. Campbell Ins., Inc.*,
  No. 3:08-cv-00604, 2011 WL 2550704 (M.D. Tenn. June 27, 2011), *order set aside*, 2011 WL 6259473 (M.D. Tenn. 2011)..............................................................................9

*B & L Corp. v. Thomas and Thorngren, Inc.*,
  162 S.W.3d 189 (Tenn. Ct. App. 2004) ..............................................................................9

*Beijing Fito Med. Co., Ltd. v. Wright Med. Tech., Inc.*,
  No. 2:15-cv-02258-JPM-tmp, 2016 WL 502109 (W.D. Tenn. Feb. 8, 2016) ....................11

*Broadnax v. Swift Transp. Co.*,
  694 F. Supp. 2d 947 (W.D. Tenn. 2010) ............................................................................14

*Capital TCP, LLC v. New Horizon Memphis, LLC*,
  No. 207CV02157JPMDKV, 2009 WL 10665371 (W.D. Tenn. Sept. 24, 2009) ................18

*CPB Mgmt., Inc. v. Everly*,
  939 S.W.2d 78 (Tenn. Ct. App. 1996) ................................................................................14

*In re Fifth Third Early Access Cash Advance Litig.*,
  925 F.3d 265 (6th Cir. 2019) ..............................................................................................11

*Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf, Haldenstein Adler Freeman & Herz, LLP*,
  601 F.Supp.2d 991 (W.D. Tenn. 2009)................................................................................16

*Impulsaria, LLC v. United Distrib. Grp., LLC*,
  No. 1:11-CV-1220, 2012 WL 5178147 (W.D. Mich. Oct. 18, 2012) ..................................7

*Metro Sanitation, L.L.C. v. C & R Maint., Inc.*,
  No. 05-70673, 2005 WL 1861931 (E.D. Mich. Aug. 4, 2005)..............................................7

*Moore v. Weinstein Co., LLC*,
  Case No. 12-5715, 545 Fed. Appx. 405 (6th Cir. Oct. 31, 2013) ...................................6, 7

*PaineWebber, Inc. v. Cohen*,
  276 F.3d 197 (6th Cir. 2001) ..............................................................................................18

iii

*PartyLite Gifts, Inc. v. Swiss Colony Occasions*,
  246 F. App'x 969 (6th Cir. 2007) ........................................................................9

*Pearson Educ., Inc. v. C&N Logistics, Inc.*,
  No. 3:18-CV-00438, 2018 WL 6528128 (M.D. Tenn. Dec. 12, 2018) ....................7

*PGT Trucking, Inc. v. Jones*,
  No. 15-1032, 2015 WL 4094265 (W.D. Tenn. July 7, 2015) ...................................9

*ProductiveMD, LLC v. 4UMD, LLC*,
  821 F. Supp. 2d 955 (M.D. Tenn. 2011) .............................................................8

*SDC Financial, LLC, et al. v. Align Tech., Inc.*,
  No. 2019 CH 2955 (Ill. Cir. Ct. Apr. 29, 2019) .................................................3

*Spirit Monkey, LLC v. Imagestuff.com, Inc.*,
  No. SA17CA48OLGHJB, 2017 WL 8182724 (W.D. Tex. July 24, 2017) ..............6

*Vincit Enters., Inc. v. Zimmerman*,
  2006 WL 1319515 (E.D. Tenn. May 12, 2006) ..................................................14

*Western Excelsior Corp. v. Propex Operating Co., LLC*,
  No. 1:16-cv-506, 2017 WL 11195421 (E.D. Tenn. Sept. 6, 2017).........................11

*Williams-Sonoma Direct, Inc. v. Arhaus, LLC*,
  304 F.R.D. 520 (W.D. Tenn. 2015) ..................................................................16

*YETI Coolers, LLC v. JDS Indus., Inc.*,
  300 F. Supp. 3d 899 (W.D. Tex. 2018)................................................................6

*Young v. WH Admin., Inc.*,
  No. 117CV02829STAEGB, 2018 WL 4016451 (W.D. Tenn. Aug. 22, 2018)........18

**Statutes**

Lanham Act................................................................................................7

Tenn. Code Ann. § 47-25-513 ......................................................................5

Tenn. Code Ann. § 47-25-513(a)(1)-(7) .........................................................6

Tenn. Code Ann. § 47-25-1702(2)(B)(ii)(c) .....................................................8

Tenn. Code Ann. § 47-25-1708(b)(1) ...........................................................14

Tennessee Trademark Dilution Act ..............................................................2, 5

Tennessee Uniform Trade Secrets Act ............................2, 5, 6, 7, 9, 10, 11, 14, 15

**Other Authorities**

Fed R. Civ. P. 8(d)(3)................................................................................................................14

Fed. R. Civ. P. 19........................................................................................................15, 16,17, 18

21Tenn. Prac. Contract Law and Practice § 7:28(2019)................................................................9

**<u>Introduction</u>**

Plaintiffs SDC Financial, LLC and SmileDirectClub, LLC (together, "SDC") pioneered the direct-to-consumer clear aligner market. Among other challenges, SDC had to navigate a complex web of regulations across fifty different states. Fortunately, SDC's senior management had extensive experience with direct-to-consumer companies in highly regulated markets—they had founded companies such as Quicken Loans (mortgages) and 1-800-Contacts (optometry). Under their guidance, SDC developed confidential and proprietary workflows, data and metrics, business and marketing strategies, and other confidential information and trade secrets necessary to penetrate this challenging new market.

SDC primarily goes to market through its innovative SMILESHOP retail stores—comfortable, friendly stores where consumers can learn about clear aligner therapy and start their journey. These stores have expanded rapidly—in less than four years, SDC has opened more than 240 stores across the country. In 2016, impressed by SDC's stunning success, Align Technology, Inc.—a company that launched the invisible orthodontics market with its Invisalign system—purchased a minority share in the company and became SDC's supplier. This gave Align extensive access to SDC's confidential information and trade secrets, so Align signed a series of agreements protecting this information and promising not to work with any competing businesses.

Defendant Martin Bremer worked at Align at the time and played an integral role in adapting Align's manufacturing process to meet SDC's needs. As a result, Bremer learned the ins and outs of SDC's business model. He also knew

or should have known about Align's agreement and its restrictions on use of SDC's information and working with competing businesses.

Although Bremer had no prior direct-to-consumer or retail experience, he soon left Align to open his own clear aligner business called "SmileStore" in Nashville, Tennessee—the location of SDC's headquarters. Bremer markets "SmileStore" as an alternative to traditional doctors' offices and his "SmileStore" mimics SDC's SMILESHOP stores in almost every detail—it relies on the confusingly similar "SMILESTORE" mark; offers consumers similar services before, during, and after their appointments; and uses Align as a supplier—in violation of Align's agreements not to work with any competing businesses. SDC repeatedly warned Bremer not to violate SDC's rights, but Bremer ignored these warnings. SDC therefore had no choice but to bring this action.

SDC properly asserts a series of claims against Bremer and his business enterprise. First, SDC has sufficiently alleged the famousness of its SMILESHOP stores under the Tennessee Trademark Dilution Act. Second, Bremer cannot avoid accounting for his misappropriation of SDC's trade secrets by claiming that he "remembered" those secrets. Third, the Tennessee Uniform Trade Secrets Act ("TUTSA") does not preempt SDC's interference claims because the "gravamen" of these claims is enforcement of Align's non-competition obligations. Fourth, Align is not a required party under Fed. R. Civ. P. 19(a) because its interests are virtually identical to those of the defendants in this lawsuit. In any event, Align's obligations under the applicable agreements are subject to arbitration with SDC. The Court therefore should deny the motion to dismiss.

## Factual Background

### SDC's SMILESHOP Trademark & Confidential Information

SDC operates over 240 SMILESHOP retail stores throughout the United States and Canada. (Compl. ¶ 21) The SMILESHOP stores are comfortable retail locations that offer consumers the ability to learn about clear aligner therapy (Compl. ¶¶ 17, 19), receive a free iTero scan, (Compl. ¶ 19), and explore pricing and financing options for aligners (Compl. ¶ 19).

With substantial time, money, and effort—SDC developed confidential information and trade secrets, including unique workflows, business strategies and development plans for its SMILESHOP stores, marketing strategies and results, and the design, development, and implementation of SDC's software platform. (Compl. ¶¶ 23, 29-30, 69, 75-76) An Illinois state court recently recognized SDC's protectable confidential information, by confirming an arbitration award ordering Align to return and not to use that information. *See SDC Financial, LLC, et al. v. Align Tech., Inc.,* No. 2019 CH 2955 (Ill. Cir. Ct. Apr. 29, 2019) and public portion of Final Arbitration Award, attached as **Exhibit 1**.

SMILESHOP is an inherently distinctive mark that has attained a high level of acquired distinctiveness through SDC's SMILESHOP retail stores, particularly in Tennessee. (Compl. ¶¶ 22, 57) SDC started in Nashville; it used Nashville as the site of its extensive advertising and promotion of SMILESHOP stores; it operates a SMILESHOP location in Nashville; and it maintains its headquarters in Nashville. (Compl. ¶¶ 22, 57)

**The SDC-Align Relationship**

In 2016, Align became a member of SmileDirectClub, LLC and signed its Operating Agreement. (Compl. ¶ 25) In 2018, as part of a refinancing, Align became a member of SDC Financial, LLC, and signed its Operating Agreement. Under both Operating Agreements, Align agreed to not "directly or indirectly … engage in … any Competing Business …." (Compl. ¶ 27) A "Competing Business" includes "any provider of services identical or substantially similar to the services provided by [SDC] and its Affiliates …." (*Id.*) Align also signed a Supply Agreement with SDC in 2016, agreeing not to provide aligners to any other direct-to-consumer company. (Compl. ¶ 25)

**Bremer's History with SDC and Align**

At the time of these agreements, Bremer served as Align's Global Process Owner (Plan-to-Make). (Compl. ¶ 28) He worked closely with SDC, developing the manufacturing process that Align used to fill aligner orders for SDC's tele-dentistry platform. (Compl. ¶ 29) Relying on the protections of the agreements, SDC integrated Bremer into SDC's business, adding him to weekly calls, meeting with him in San Jose, and hosting him at its Nashville headquarters. (*Id.*) Through this relationship, Bremer learned SDC's business process, including its confidential information and trade secrets. (Compl. ¶¶ 29-30) He later exploited SDC's protected information to develop SmileStore. (Compl. ¶¶ 71, 77)

**Bremer's SmileStore**

A year after leaving Align, Bremer and Smile Store, LLC ("Smile Store"), MH, D.M.D. of Tennessee PLLC, Smile Store Support Services, LLC (together

4

"Corporate Defendants" and together with Bremer, "Smile Store Group") publicly announced plans to open "SmileStore." (Compl. ¶ 33, Ex. D) SDC promptly sent Bremer a letter objecting that the "SMILESTORE" name was confusingly similar to SDC's "SMILESHOP" mark. (Compl. ¶ 37) Undeterred, the Smile Store Group opened SmileStore, an "Invisalign Provider" in Green Hills Mall, a Nashville shopping mall. (Compl. ¶ 33) Bremer has made every effort to simulate the SMILESHOP stores and profit on SDC's success. SmileStore—just like SDC's SMILESHOP stores—markets itself as a more affordable and convenient alternative to traditional orthodontic offices, and offers many of the same services as SDC's SMILESHOP stores. (Compl. ¶¶ 2, 18, 35)

## **Argument**

**I.      SDC Has Properly Pled A Claim For Trademark Dilution (Count III).**

**A.      SDC Has Properly Pled Fame in Tennessee.**

The Tennessee Trademark Dilution Act ("TTDA") allows owners of marks that are famous "in this state" to protect their marks. Tenn. Code. Ann. § 47-25-513. Nationwide fame is not required. For example, in determining whether a mark is sufficiently "distinctive and famous" to qualify for protection, the TTDA encourages courts to consider, among other things:

- the degree of inherent or acquired distinctiveness of the mark "in this state";

- the duration and extent of advertising and publicity of the mark "in this state"; and

- The recognition of the mark in the trading areas and channels of trade "in this state."

Tenn. Code. Ann. § 47-25-513.

As the Sixth Circuit has noted, "the scope of the famousness inquiry under state law requires courts to evaluate in-state famousness." *Moore v. Weinstein Co., LLC*, Case No. 12-5715, 545 Fed. Appx. 405, 411 (6th Cir. Oct. 31, 2013).[1] *Cf. Spirit Monkey, LLC v. Imagestuff.com, Inc.*, No. SA17CA48OLGHJB, 2017 WL 8182724, at *4 (W.D. Tex. July 24, 2017), *report and recommendation adopted*, No. CV SA-17-CA-48-OG, 2017 WL 8182695 (W.D. Tex. Sept. 14, 2017) (recognizing distinction between scope of fame required under federal dilution law and Texas law, which only requires recognition "throughout the state or in a geographic area in this state"); *YETI Coolers, LLC v. JDS Indus., Inc.*, 300 F. Supp. 3d 899, 914–15 (W.D. Tex. 2018) (denying a motion to dismiss because plaintiff sufficiently alleged "it has extensively and continuously promoted and used its trade dress in the United States and in the State of Texas.")

SDC has pled more than sufficient facts to show that its SMILESHOP mark is famous in Tennessee. SDC has alleged it (1) launched and established its headquarters in Nashville, Tennessee; (2) successfully operated the Nashville SMILESHOP store since 2016; and (3) extensively advertised and promoted services under the mark since 2016. (Compl. ¶¶ 22, 57). If the Court decides that more is required, SDC seeks leave to re-plead this count—among other things, to include allegations that it spends hundreds of millions of dollars on advertising each year; that it runs thousands of television commercials each

---

[1] In *Moore*, the Sixth Circuit affirmed summary judgment against a TTDA claim, but only because the musician plaintiff tried to rely on his own personal fame, rather than the fame of his alleged mark. *See* 545 Fed. Appx. at 411.

week; that its advertisements feature famous celebrity spokesmen such as Shawn Mendes; that its advertisements have appeared during the Grammy's, SEC football games and the NCAA tournament; and that as a result of its marketing, it has substantial brand awareness among the public.

### B. The Court Should Not Decide the Fact-Intensive Inquiry of Fame on a Motion to Dismiss.

The TTDA contains a list of factors for courts to consider when determining whether a mark is distinctive or famous. Tenn. Code Ann. § 47-25-513(a)(1)-(7). Courts in the Sixth Circuit have recognized that even "a cursory review of these factors shows that the famousness and distinctiveness analysis require the court to consider facts outside the pleadings and thus cannot be done on a 12(b)(6) motion." *Metro Sanitation, L.L.C. v. C & R Maint., Inc.*, No. 05-70673, 2005 WL 1861931, at *5 (E.D. Mich. Aug. 4, 2005); *Impulsaria, LLC v. United Distrib. Grp., LLC*, No. 1:11-CV-1220, 2012 WL 5178147, *7 (W.D. Mich. Oct. 18, 2012) (plaintiff stated federal dilution claim stated where it pleaded it was the sole source of goods sold under its mark, had used its mark for years and was one of the fastest growing suppliers). *See also Moore*, 545 Fed. Appx. at 411 ("Lanham Act 'famousness' factors substantially overlap with Tennessee's 'famousness' evaluation"). The Court should weigh the eight relevant and non-exhaustive dilution factors outlined in the TTDA only after reviewing the relevant evidence.[2]

---

[2] None of the cases relied upon by the Smile Store Group support dismissal. The only motion to dismiss case, *Pearson Educ., Inc. v. C&N Logistics, Inc.*, No. 3:18-CV-00438, 2018 WL 6528128, *4 (M.D. Tenn. Dec. 12, 2018), involved redundant, "mirror image" counterclaims that made no factual allegations whatsoever of fame or distinctiveness. None of the other cases involved a motion to dismiss. *Moore*, 545 Fed. Appx. 405 (summary judgment after denial of earlier motion to dismiss); *TCPIP*,

## II. SDC Has Properly Pled Claims for Misappropriation of Trade Secrets (Counts V and VI).

### A. SDC Sufficiently Pled Misappropriation of Trade Secrets.

The Smile Store Group does not dispute that SDC has properly pled that it had protectable trade secrets. They instead appear to argue that the Court should dismiss the trade secrets claims because SDC did not allege that Bremer "improperly accessed" that information when he worked at Align and or signed a nondisclosure agreement. (Motion at 7) This argument lacks merit.

"Misappropriation" of a trade secret includes, among other things, "use of a trade secret of another without express or implied consent by a person who … [a]t the time of … use, knew or had reason to know that that person's knowledge of the trade secret was … [d]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; …" Tenn. Code Ann. § 47-25-1702(2)(B)(ii)(c). Bremer, as an Align employee, knew or had reason to know that Align had a duty to maintain the secrecy of SDC's confidential information and secret secrets. (Compl. ¶¶ 70, 76) Bremer's use of that confidential information and trade secrets after he left Align therefore constitutes "misappropriation" even if he did not "improperly access" the information at Align or sign a nondisclosure agreement. Simply put, an employee who gains access to another company's trade secrets as part of his employment cannot use those trade secrets for his own benefit after his employment terminates.

---

244 F.3d 88 (vacating portion of preliminary injunction); *I.P. Lund*, 163 F.3d 27 (same); *Avery Dennison*, 189 F.3d 868 (reversing summary judgment); *Moseley*, 537 U.S. 418 (reversing summary judgment).

8

**B. Determining Whether Bremer Relied on Remembered Information Is Not Proper At This Stage.**

The Smile Store Group argues that SDC's "allegations of trade secrets misappropriation fail as a matter of law because an individual's 'remembered information' and relationships with customers are not trade secrets." (Motion at 7) However, whether Bremer relied solely on "remembered information and relationships with customers" is a factual question that the Court should not resolve at the motion to dismiss stage. *ProductiveMD, LLC v. 4UMD, LLC,* 821 F. Supp. 2d 955, 962 (M.D. Tenn. 2011) (at the pleading stage, "the Court has no way of determining from the pleadings what Becker did or did not remember when he went to work for 4UMD."). *See also PGT Trucking, Inc. v. Jones*, No. 15-1032, 2015 WL 4094265, at *3 (W.D. Tenn. July 7, 2015) (refusing to dismiss TUTSA claim because "the Court would act hastily by accepting Jones's reasoning that he relied solely on his memories and existing relationships rather than misappropriating a trade secret."). The two cases upon which Bremer relies— *PartyLite Gifts, Inc. v. Swiss Colony Occasions,* 246 F. App'x 969 (6th Cir. 2007) and *B & L Corp. v. Thomas and Thorngren, Inc.*, 162 S.W.3d 189 (Tenn. Ct. App. 2004)—are inapposite because they involve appeals from a preliminary injunction order and final judgment respectively, not a motion to dismiss.

**C. "Remembered Information" Based on Materials that Constitute Trade Secrets is Protectable.**

"Although information based on recollection is not a trade secret, it will still have this status where the remembrance is based on materials that do constitute trade secrets." Steven W. Feldman, 21 Tenn. Prac. Contract Law and

9

Case 3:19-cv-00525   Document 24   Filed 08/15/19   Page 15 of 27 PageID #: 118

Practice § 7:28 (2019) (citing *Am. Nat. Prop. & Cas. Co. v. Campbell Ins., Inc.*, No. 3:08-cv-00604, 2011 WL 2550704 (M.D. Tenn. June 27, 2011), *order set aside*, 2011 WL 6259473 (M.D. Tenn. 2011) (order set aside because parties settled)). Put another way, someone with a photographic memory cannot steal the formula for Coca-Cola® simply by remembering it, rather than writing it down.

The trade secrets that SDC seeks to protect are not business prices that Bremer "simply remembered." *Am. Nat. Prop.*, 2011 WL 2550704, at *11 n. 18. They include details behind SDC's business strategies and development plans for its SMILESHOP retail stores, marketing strategies and results, SMILESHOP workflows, and the design, development, and implementation of SDC's software platform. (Compl. ¶¶ 28-30, 69-70, 75-76) The Illinois state court recognized SDC had protectable confidential information by confirming the arbitration award enjoining Align from using SDC's confidential information for any purpose and ordering Align to return to SDC all confidential information in its possession. (Ex. 1) Even if Bremer relied solely on a photographic memory of SDC's trade secrets and confidential information to open the SMILESTORE shop, that information is still protectable because his memory is based on materials that constitute trade secrets.

### III. SDC Has Properly Pled Inducement of Breach of Contract (Counts VI and VII) and Interference with Business Relationships (Count IX).

#### A. The TUTSA Does Not Preempt SDC's Claims.

The TUSTA does not preempt inducement of breach of contract and interference with business relationship claims because the gravamen of those claims Bremer's and Smile Store's interference with the Restrictive Covenants in

10

the Operating Agreements and the exclusivity provisions in the Supply Agreement, not his use of SDC's confidential information and trade secrets.

In the Operating Agreement, Align agreed not to engage in or contract with any Competing Business. (Compl. ¶ 27) In the Supply Agreement, Align agreed not to provide aligners to any other company distributing aligners through a DTC model. (Id.) Bremer knew of the agreements and the restrictions in those agreements. (Compl. ¶¶ 82, 92, 102) He nevertheless worked with Align to launch his SMILESTORE—a "Competing Business" that employees a DTC model—in violation of the Operating Agreement. Because these claims do not rest on the misappropriation of trade secrets, the TUSTA does not preempt them. *Beijing Fito Med. Co., Ltd. v. Wright Med. Tech., Inc.*, No. 2:15-cv-02258-JPM-tmp, 2016 WL 502109, at *4 (W.D. Tenn. Feb. 8, 2016) (allegations did not rely on a finding of misappropriation, so tortious interference counterclaim was not preempted by TUTSA); *Western Excelsior Corp. v. Propex Operating Co., LLC*, No. 1:16-cv-506, 2017 WL 11195421, at *3 (E.D. Tenn. Sept. 6, 2017) (tortious interference claim not based on trade secrets was not preempted by TUTSA).

### B. SDC Proper Alleges that SmileStore is a DTC Company and Provides Substantially Similar Services.

The Smile Store Group argues that the allegations of the complaint show that they do not operate on a DTC model or in a substantially similar way to SDC. (Motion at 10-11) This argument, however, crashes headlong into the brick wall of the well-established principle that the Court should accept all allegations in the complaint as true and draw all reasonable inferences in a plaintiff's favor when ruling on a motion to dismiss. *In re Fifth Third Early Access Cash Advance*

11

*Litig.*, 925 F.3d 265, 275–76 (6th Cir. 2019). SDC has more than adequately pled that SmileStore is a "competing business" under the Operating Agreements and operates on a DTC model. (Compl. ¶ 36).

To skirt this well-established rule, the Smile Store Group claims that the fact that it is associated with MH, D.M.D. and has a doctor on-site establishes as a matter of law that it does not operate a DTC model or provide similar services, making it a "Competing Business" under the Operating Agreements. (Motion at 11-12) However, the mere existence of an on-site doctor does not determine whether SmileStore competes with SDC. Rather, the services offered by SmileStore, as a whole, make it a competing business. In a recent arbitration between SDC and Align, the arbitrator enforced the Restrictive Covenants in the Operating Agreements by enjoining Align from providing nine services to consumers in a retail environment. (Ex. 1, Final Arbitration Award, at 2-3) The Smile Store Group provides these services as well, making it a Competing Business with whom Align cannot contract under those agreements.

Notably, SmileStore markets itself as a DTC alternative to traditional doctors' offices, touting its "flexible hours, online scheduling," and "no-waiting room philosophy." (Compl. Ex. A, at 1-2) SmileStore advertises "up to 50% fewer check-ups" than a conventional doctor's office. (*Id.*). SmileStore offers free iTero scans, visualizations, and payment and financing options—all delivered through a "Care Coordinator," not a doctor. (Compl. ¶ 35; Ex. C, at 1) To the extent SmileStore—a shop in a mall that capitalizes on how it differs from doctors'

offices—disputes the definition of "DTC" or whether SmileStore operates on a DTC model, these arguments are inappropriate on a motion to dismiss.

### C. SDC Sufficiently Pled the Smile Store Group Knew of the Operating Agreements and Supply Agreement.

The Smile Store Group asks that the Court to dismiss Counts VI, VII and IX because, they claim, the allegations of the Complaint demonstrate that they did not know of the agreements between SDC and Align when they began operating their stores. (Motion, at 12) This is incorrect. SDC expressly alleges that the Smile Store Group knew of these contracts. (Compl. ¶¶ 82, 92, 102) In addition, it is a reasonable inference that—as Align's Global Process Owner, whose job responsibilities included substantial interaction with SDC and were governed by the agreements—Bremer knew of the agreements and the restrictions in those agreements. Bremer developed the manufacturing process that Align used to fulfill SDC orders, pursuant to the Operating Agreements. (Compl. ¶¶ 29, 82). Bremer also visited SDC's office in Nashville, Tennessee; he studied SDC's software portal; and he built a relationship with SDC and its employees. (Compl. ¶¶ 30-31). Bremer even expressed interest in applying to be COO of SDC. (Compl. ¶ 31). He certainly knew about contractual provisions once he received the cease and desist letter from SDC. (Compl., ¶¶ 39-40)

### D. SDC's 2018 Letter Did Not Give Bremer Permission to Interfere with SDC's Agreements with Align.

When SDC first learned about Bremer's intended use of the phrase SMILESTORE in 2018, SDC sent Bremer a letter informing him that the name was confusingly similar to SDC's "SMILESHOP" mark and may violate SDC's

trademark rights. (Compl. ¶ 37). The Smile Store Group now argues that SDC's 2018 letter gave them "permission" to engage with Align in violation of the Operating Agreements and Supply Agreement. (Motion at 13-14).

SDC's letter did not give the Smile Store Group permission to violate SDC's rights. On the contrary, the letter cautioned the Smile Store Group away from use of a similar trademark in a manner likely to lead to consumer confusion. At the time, Smile Store Group had not yet launched. SDC did not know how they would come to market or what, if any connection they might have with Align. Once the Smile Store Group launched its competing business, SDC expressly demanded that the Smile Store Group cease and desist from its inducement of breaches of SDC's contracts with Align. (Compl. ¶ 40) The Court therefore should deny the motion as to Counts VI, VII and VIII.

## IV.  SDC Has Properly Pled A Claim for Unjust Enrichment (Count X).

### A.  SDC'S Unjust Enrichment Claim is a Quasi Contractual Claim Excluded from Preemption.

The TUTSA does not preempt SDC's unjust enrichment claim. The TUTSA does not subsume "contractual remedies, whether or not based upon misappropriation of a trade secret." Tenn. Code Ann. § 47-25-1708(b)(1); *Vincit Enters., Inc. v. Zimmerman*, 2006 WL 1319515, at *7 (E.D. Tenn. May 12, 2006). Count X asks the Court to impose on Bremer a contract implied at law, which falls outside the scope of TUTSA's preemption.

Unjust enrichment "is founded upon the principle that someone who receives 'a benefit desired by him, under circumstances rendering it inequitable to retain it without making compensation, must do so.'" *CPB Mgmt., Inc. v. Everly*,

939 S.W.2d 78, 80 (Tenn. Ct. App. 1996) (citing *Lawler v. Zapletali*, 679 S.W.2d 950, 955 (Tenn. App. 1984)). Here, Bremer received a benefit—the opportunity to learn about SDC's business model and observe SDC's inner workings—for which SDC could reasonably expect payment. (Compl. ¶¶ 29, 82) SDC, after all, does not share information about its business model for free.

Even if the TUTSA preempted SDC's unjust enrichment claim (which it does not), SDC may still plead unjust enrichment in the alternative. Fed R. Civ. P. 8(d)(3)) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *Broadnax v. Swift Transp. Co.*, 694 F. Supp. 2d 947, 952 (W.D. Tenn. 2010) (plaintiff may plead unjust enrichment as an alternative theory of relief). If the Court dismisses SDC's unjust enrichment claim at this early stage based on preemption and SDC ultimately does not prevail on its TUTSA claims, SDC will have lost its opportunity to seek relief under this alternative theory.

**B.    SDC Willingly Gave Bremer a Benefit.**

The Smile Store Group's four-sentence argument that SDC did not "willingly" confer a benefit on Bremer lacks merit. (Motion at 15) SDC willingly handed over its confidential information to Bremer, in reliance on the protections of the Operating Agreements. SDC employees, for example, participated in weekly calls with Bremer to develop the manufacturing process so that Align could create SDC's aligners, met with him in San Jose, and even hosted him at the SDC headquarters (Compl. ¶¶ 29-30)

**V.     The Court Should Not Dismiss The Complaint Under Fed. R. Civ. P. 19.**

> **A.     Align is Not A Required Party Under Fed. R. Civ. P.  19(a).**

The Smile Store Group asks this Court to dismiss SDC's Complaint for failure to join Align as a required party. Although the Smile Store Group bears the burden to prove this defense, they do not address, much less analyze the considerations a court will make before employing such a drastic measure. (*See* Motion at 15-16)

The Sixth Circuit uses a three-part test to determine whether a party is a required party under Fed. R. Civ. P. 19. "First, the court must determine whether the person or entity is a necessary party under Rule 19(a). Second, if the person or entity is a necessary party, the court must decide if joinder of that person or entity will deprive the court of subject matter jurisdiction. Third, if joinder is not feasible because it will eliminate the court's ability to hear the case, the court must analyze the Rule 19(b) factors to determine whether the court should in equity and good conscience dismiss the case because the absentee is indispensable." *Williams-Sonoma Direct, Inc. v. Arhaus, LLC*, 304 F.R.D. 520, 530 (W.D. Tenn. 2015).

Under Fed. R. Civ. P. 19(a), a party is required party if "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or

otherwise inconsistent obligations because of the interest." The Smile Store Group argues that Align is a necessary party under subsection (i) because Align's absence will impede and impair its ability to protect its interest in selling aligners to licensed orthodontists and on-site dentists. (Motion at 15-16)

However, it is well established that if "an absent party is adequately represented, then there is no practical prejudice to the absent party." *Williams-Sonoma*, 304 F.R.D. at 533 (internal quotations omitted). "Courts have found that where an absent party's interests are virtually identical to those of an existing party in the litigation and the absent party's interests will be adequately represented by the existing party, the absent party is not 'necessary' and need not be joined under Rule 19(a)." *Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf, Haldenstein Adler Freeman & Herz, LLP*, 601 F.Supp.2d 991, 1001 (W.D. Tenn. 2009); *Am. Express Travel Related Serv., Co., Inc. v. Bank One-Dearborn, N.A.*, 2006 WL 2457067, at *2 (6th Cir. Aug. 24, 2006) (where the absent party's interests were virtually identical to an existing party, those interests would be adequately represented).

Here, Align and the Smile Store Group share a financial interest in Align's distribution of aligners and defeating SDC's claims, making their interests virtually identical. The Smile Store Group does not—and cannot—identify any defense available to Align that the Smile Store Group could not raise itself. The Court therefore should hold that Align is not a required party.

**B.    Because Joinder is Not Feasible, The Court Should Not Dismiss The Claims Against The Smile Store Group Even If Align is a Required Party.**

SDC cannot assert claims in this Court against Align under the Operating and Supply Agreements because those agreements contain arbitration clauses. Under Fed. R. Civ. P. 19(b), if "a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or be dismissed." Fed. R. Civ. P. 19(b). Rule 19(b) lists four factors that a court must consider if a party that is required to be joined if feasible cannot be joined:  (1) the extent to which a judgment rendered in the party's absence might prejudice that party or the existing parties; (2) whether and to what extent any prejudice could be reduced or avoided by protective provisions in the judgment, shaping of the relief, or other measures; (3) whether a judgment rendered in the party's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed. R. Civ. P. 19(b)*; see also, PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 202 (6th Cir. 2001) (holding that absent party was necessary but not indispensable, and that district court erred in dismissing the action). "Generally, federal courts are reluctant to grant motions to dismiss based on non-joinder, and dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result."

18

*Capital TCP, LLC v. New Horizon Memphis, LLC*, No. 207CV02157JPMDKV, 2009 WL 10665371, at *2 (W.D. Tenn. Sept. 24, 2009).

In this case, a judgment rendered in Align's absence would be adequate. A dismissal for non-joinder, on the other hand, would strip SDC of an adequate remedy against the Smile Store Group since SDC cannot compel the Smile Store Group to arbitration. Moreover, "Rule 19 calls for a pragmatic approach; simply because some forms of relief might not be available due to the absence of certain parties, the entire suit should not be dismissed if meaningful relief can still be accorded." *Young v. WH Admin., Inc.*, No. 117CV02829STAEGB, 2018 WL 4016451, at *3 (W.D. Tenn. Aug. 22, 2018) (holding that absent party was not necessary under Rule 19(a) and finding no need to proceed to Rule 19(b)). As in *Young*, this Court need not proceed to a Rule 19(b) analysis because Align is not a required party under Rule 19(a). However, even under Rule 19(b), this action should proceed among the existing parties because a judgment rendered in Align's absence would be adequate, but SDC would not have an adequate remedy if the action is dismissed for nonjoinder.

## Conclusion

Plaintiffs SDC Financial, LLC and SmileDirectClub, LLC respectfully request that this Court deny the Motion to Dismiss Counts III and V-X of the Complaint, and grant such other and further relief as this Court deems just and equitable.

Dated: August 15, 2019          Respectfully submitted,

By:    *s/ R. Brandon Bundren*

George H. Cate, III (BPR No. 012595)
R. Brandon Bundren (BPR No. 030985)
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
Nashville, TN 37203
Tel: (615) 244-2582
Fax: (615) 252-6347
gcate@bradley.com
bbundren@bradley.com

James D. Dasso, (Admitted *Pro Hac Vice*)
Susan Poll Klaessy, (Admitted *Pro Hac Vice*)
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
jdasso@foley.com
spollklaessy@foley.com

*Attorneys for Plaintiffs SDC Financial, LLC and SmileDirectClub, LLC*

**CERTIFICATE OF SERVICE**

I certify that on August 15, 2019, I electronically filed a true and correct copy of the foregoing with the U.S. District Court for the Middle District of Tennessee through the Court's Electronic Case Filing System, which will send notice of this filing to counsel of record as follows:

Paige W. Mills (pmills@bassberry.com)
Ryan A. Lee (ryan.lee@bassberry.com)
BASS, BERRY, & SIMS PLC

*Counsel for Defendants*

*s/ R. Brandon Bundren*
R. Brandon Bundren