# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| SDC FINANCIAL, LLC and<br>SMILEDIRECTCLUB, LLC,<br><br>     Plaintiffs,<br><br>   v.<br><br>MARTIN BREMER, SMILE STORE,<br>LLC, SMILE STORE SUPPORT<br>SERVICES, LLC, and MH, D.M.D. OF<br>TENNESSEE, PLLC,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No. 3:19-cv-0525**<br><br>**Chief Aleta A. Trauger** |
| MARTIN BREMER, SMILE STORE,<br>LLC, SMILE STORE SUPPORT<br>SERVICES, LLC, and MH, D.M.D. OF<br>TENNESSEE, PLLC,<br><br>     Counter-Plaintiffs,<br><br>   v.<br><br>SDC FINANCIAL, LLC and<br>SMILEDIRECTCLUB, LLC,<br><br>     Counter-Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM TO PLAINTIFFS' AMENDED COMPLAINT

Defendants Martin Bremer ("Bremer"), Smile Store, LLC ("Smile Store"), Smile Store

Support Services, LLC ("Smile Support") and MH, D.M.D. of Tennessee, PLLC (collectively,

"Defendants"), by and through their undersigned counsel, and for their Answer, Affirmative Defenses, and Counterclaim to Plaintiffs' Amended Complaint states as follows:

## Introduction

1.      Paragraph 1 states a legal conclusion to which no response is required.

2.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2.

3.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3.

4.      Defendants admit that in 2016, Bremer, as Align's Global Process Owner (Plan-to-Make), was involved in adapting Align's manufacturing process to SDC's needs. Defendants admit that Bremer, in his role as Align's Global Process Owner (Plan-to-Make), participated in weekly calls with SDC employees, travelled to San Jose to meet with SDC employees, participated in developing technical specifications for adapting Align's manufacturing process to SDC's needs, and visited SDC's headquarters. Defendants deny the remaining allegations of Paragraph 4 and affirmatively state that Bremer did not have access to any information that was outside the scope of his responsibilities as the Global Process Owner at Align.

5.      Defendants deny the allegations of Paragraph 5.

6.      Defendants deny the allegations of Paragraph 6.

## Jurisdiction and Venue

7.      Paragraph 7 states a legal conclusion to which no response is required.

8.      Paragraph 8 states a legal conclusion to which no response is required.

9.      Paragraph 9 states a legal conclusion to which no response is required.

10.     Paragraph 10 states a legal conclusion to which no response is required.

2

## The Parties

11.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11.

12.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12.

13.     Defendants deny the allegations of Paragraph 13.

14.     Defendants admit MH D.M.D. of Tennessee, PLLC's principal place of business is located at 2126 Abbott Martin Road, Suite 168, Nashville, Tennessee.  Defendants deny the remaining allegations of Paragraph 14.

15.     Defendants admit the allegations of Paragraph 15.

16.     Defendants admit Bremer previously worked at Align and resides in Nashville, Tennessee.  Defendants deny the remaining allegations of Paragraph 16.

## SDC's SMILESHOP Retail Stores

17.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17.

18.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18.

19.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19.

20.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20.

3

## SDC's SMILESHOP Trademark

21.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21 but note that these allegations are inconsistent with publically available information stating that the first SMILESHOP was opened in West Village, New York City in October of 2016.

22.     Defendants admit SDC's headquarters are in Nashville, Tennessee.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 22.

23.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23.

24.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24.

25.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25.

26.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 26.

27.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27.

28.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 28.

29.     The first two sentences of Paragraph 28 contain legal conclusions to which no response is required, but to the extent that one is required, these allegations are denied.

Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 29.

30.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 30.

31.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 31.

32.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 32.

<b><u>SDC's Confidential Information & Trade Secrets</u></b>

33.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 33, but deny that any business processes that are in full view of customers who did not sign a non-disclosure agreement are not trade secrets or confidential information.

34.     Defendants deny the truth of the allegations of Paragraph 34.

<b><u>The SDC-Align Relationship</u></b>

35.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 35.

36.     Defendants lack sufficient information to form a belief as to the truth of the allegations of Paragraph 36.

37.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 37.

## Bremer's History with SDC and Align

38.     Defendants deny the allegations of Paragraph 38, because at the time the parties entered into the alleged agreement, SMILESHOPS did not yet exist.

39.     Defendants admit that in 2016, Bremer served as Align's Global Process Owner (Plan-to-Make), was involved in adapting Align's manufacturing process to SDC's needs. Defendants admit that Bremer, in his role as Align's Global Process Owner (Plan-to-Make), participated in weekly calls with SDC employees, travelled to San Jose to meet with SDC employees, participated in developing technical specifications for adapting Align's manufacturing process to SDC's needs, and visited SDC's headquarters.  Defendants deny that Bremer learned SMILESHOPS's processes because SMILESHOP did not even exist at the time. Bremer's only involvement in the process was from the time the aligners were ordered by the doctor until they were manufactured.

40.     Defendants admit Bremer visited SDC's offices in Nashville, Tennessee but deny the remaining allegations of Paragraph 40. Defendants expressly deny that Bremer spent any significant amount of time "learning about the SDC/Align software portal" or that Bremer "did not have any experience with Align's software platform" or that it was "outside the scope of his manufacturing position at Align." At most an SDC employee spent a few minutes showing Mr. Bremer how to initiate the ordering of aligners to be manufactured. Further, he had significant experience with and knowledge of Align's software platform, which was squarely within the scope of his responsibility as Global Process Owner for Manufacturing.

41.     Defendants admit that Bremer developed relationships with some SDC employees during his time working for Align and that Bremer inquired about job openings at SDC.

Defendants deny the remaining allegations of Paragraph 41 and affirmatively state that SDC failed to hire Bremer because it could not meet his salary requirements.

42.     Defendants admit that Align asked Bremer to relocate to San Jose and that Bremer stopped working for Align in May 2017.  Defendants deny the remaining allegations of Paragraph 42.

## Defendants' Infringing SMILESTORE Mark

43.     Defendants admit the "SmileStore" retail location in the Mall at Green Hills in Nashville, Tennessee opened in May 2018.  Defendants admit that the "SmileStore" retail location is an "Invisalign Provider."  Defendants deny the remaining allegations of Paragraph 43.

44.     Defendants state that "SmileStore" website speaks for itself.  Defendants deny the remaining allegations of Paragraph 44.

45.     Defendants state that "SmileStore" website speaks for itself.  Defendants deny the remaining allegations of Paragraph 45.

46.     Defendants deny the allegations of Paragraph 46.

## SDC's Cease and Desist Letters to Bremer and Smile Store

47.     Defendants state that letter attached as Exhibit H speaks for itself.  Defendants deny the remaining allegations of Paragraph 47.

48.     Defendants deny the allegations of Paragraph 48.

49.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 49.

50.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 50.

51.     Defendants deny the allegations of Paragraph 51.

**Count I**
**Federal Trademark Infringement (15 U.S.C. § 1125(a))**
**(SDC, LLC v. Bremer and Smile Store)**

52. Defendants reallege and incorporate each and every of its foregoing answers as though fully set forth herein.

53. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 53.

54. Defendants deny the allegations of Paragraph 54.

55. Defendants deny the allegations of Paragraph 55.

56. Defendants deny the allegations of Paragraph 56.

57. Defendants deny the allegations of Paragraph 57.

58. Defendants deny the allegations of Paragraph 58.

59. Defendants deny the allegations of Paragraph 59.

60. Defendants deny the allegations of Paragraph 60.

**Count II**
**Common Law Trademark Infringement**
**(SDC, LLC v. Bremer and Smile Store)**

61. Defendants reallege and incorporate each and every of its foregoing answers as though fully set forth herein.

62. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 62.

63. Defendants deny the allegations of Paragraph 63.

64. Defendants deny the allegations of Paragraph 64.

65. Defendants deny the allegations of Paragraph 65.

## Count III
### State Trademark Dilution (Tenn. Code Ann. § 47-25-513)
### (SDC, LLC v. Bremer and Smile Store)

66.     Defendants reallege and incorporate each and every of its foregoing answers as though fully set forth herein.

67.     Defendants admit SDC is headquartered in Nashville.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the first sentence of Paragraph 67.   Defendants deny the remaining allegations of Paragraph 67.

68.     Defendants deny the allegations of Paragraph 68.

69.     Defendants deny the allegations of Paragraph 69.

70.     Defendants deny the allegations of Paragraph 70.

71.     Defendants deny the allegations of Paragraph 71.

## Count IV
### State Unfair Competition (Tenn. Code Ann. § 47-18-101, *et seq.*)
### (SDC, LLC v. Bremer and Smile Store)

72.     Defendants reallege and incorporate each and every of its foregoing answers as though fully set forth herein.

73.     Defendants deny the allegations of Paragraph 73.

74.     Defendants deny the allegations of Paragraph 74.

75.     Defendants deny the allegations of Paragraph 75.

76.     Defendants deny the allegations of Paragraph 76.

77.     Defendants deny the allegations of Paragraph 77.

**Count V**

**Trade Secret Misappropriation Under the Tennessee Uniform Trade Secret Act**
**(SDC, LLC and SDC Financial v. Bremer and Smile Store)**

78.     Defendants reallege and incorporate each and every of its foregoing answers as though fully set forth herein.

79.     Defendants deny the allegations of Paragraph 79.

80.     Defendants deny the allegations of Paragraph 80.

81.     Defendants deny the allegations of Paragraph 81.

82.     Defendants deny the allegations of Paragraph 82.

83.     Defendants deny the allegations of Paragraph 83.

**Count VI**

**Trade Secret Misappropriation Under the Federal Defend Trade Secrets Act**
**(SDC, LLC and SDC Financial v. Bremer and Smile Store)**

84.     Defendants reallege and incorporate each and every of its foregoing answers as though fully set forth herein.

85.     Defendants deny the allegations of Paragraph 85.

86.     Defendants deny the allegations of Paragraph 86.

87.     Defendants deny the allegations of Paragraph 87.

88.     Defendants deny the allegations of Paragraph 88.

89.     Defendants deny the allegations of Paragraph 89.

**Count VII**

**Common Law and Statutory Procurement/Inducement of**
**Breach of Contract – Operating Agreement**
**(SDC, LLC and SDC Financial v. Bremer and Smile Store)**

90.     Defendants reallege and incorporate each and every of its foregoing answers as though fully set forth herein.

91.     Defendants deny the allegations of Paragraph 91.

10

92.     Defendants deny the allegations of Paragraph 92.

93.     Defendants deny the allegations of Paragraph 93.

94.     Defendants deny the allegations of Paragraph 94.

95.     Defendants deny the allegations of Paragraph 95.

96.     Defendants deny the allegations of Paragraph 96.

97.     Defendants deny the allegations of Paragraph 97.

98.     Defendants deny the allegations of Paragraph 98.

99.     Defendants deny the allegations of Paragraph 99.

**Count VIII**
**Common Law and Statutory Procurement/Inducement of**
**Breach of Contract – Supply Agreement**
**(SDC, LLC v. Bremer and Smile Store)**

100.    Defendants reallege and incorporate each and every of its foregoing answers as though fully set forth herein.

101.    Defendants deny the allegations of Paragraph 101.

102.    Defendants deny the allegations of Paragraph 102.

103.    Defendants deny the allegations of Paragraph 103.

104.    Defendants deny the allegations of Paragraph 104.

105.    Defendants deny the allegations of Paragraph 105.

106.    Defendants deny the allegations of Paragraph 106.

107.    Defendants deny the allegations of Paragraph 107.

108.    Defendants deny the allegations of Paragraph 108.

109.    Defendants deny the allegations of Paragraph 109.

**Count IX**

**Intentional Interference with Existing and/or Prospective Business Relationships**
**(SDC, LLC and SDC Financial v. Bremer and Smile Store)**

110. Defendants reallege and incorporate each and every of its foregoing answers as though fully set forth herein.

111. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 111.

112. Defendants deny the allegations of Paragraph 112.

113. Defendants deny the allegations of Paragraph 113.

114. Defendants deny the allegations of Paragraph 114.

115. Defendants deny the allegations of Paragraph 115.

116. Defendants deny the allegations of Paragraph 116.

**Count X**

**Unjust Enrichment**
**(SDC, LLC and SDC Financial v. Bremer and Smile Store)**

117-122. Pursuant to the Court's Order entered on September 13, 2019 [Dkt. 41] dismissing Count X with prejudice, Defendants makes no answer to these allegations.

**PRAYER FOR RELIEF**

Plaintiffs' Prayer for Relief sets forth requests for relief to which no response is required. To the extent necessary, Defendants deny that Plaintiffs are entitled to any of the requested relief, or to any relief at all.

**DEMAND FOR JURY TRIAL**

Defendants demand a trial by jury on all issues so triable.

## **GENERAL DENIAL**

Defendants further deny each and every allegation contained in the Amended Complaint which Defendants have not specifically admitted, denied, or otherwise responded to herein.

## **AFFIRMATIVE AND OTHER DEFENSES**

Defendants hereby state the following affirmative and other defenses to the causes of action alleged in Plaintiffs' Amended Complaint:

1.      Smile Support is the owner of U.S. Registration No. 87952253 for SMILESTORE and Defendants acted at all times in compliance with that trademark registration.

2.      The Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted.

3.      The agreements that Plaintiffs claim Defendants have tortiously interfered with are illegal restraints of trade, are unenforceable, and contrary to public policy.

4.      The requested relief is barred because there is no likelihood of confusion between any valid trademark owned by Plaintiffs and the services sold by Defendants.

5.      There is no likelihood of confusion, mistake or deception because, *inter alia*, the SMILESTORE mark and the alleged trademarks of Plaintiffs are not confusingly similar.

6.      There is no likelihood of confusion, mistake, or deception because, *inter alia*, Plaintiffs' SMILESHOP mark is weak and only entitled to a narrow scope of protection.

7.      The relief requested as against Defendants is barred because no action or omission by Defendants caused Plaintiffs injury.

8.      Plaintiffs' claims are barred to the extent they have, by virtue of their own acts, omissions and conduct, waived any and all claims against Defendants.

13

9. Plaintiffs' claims are, by virtue of their own acts, omissions and conduct, estopped.

10. Any equitable relief sought by Plaintiffs is barred to the extent of their unclean hands.

11. Plaintiffs have suffered no damages.

## PRAYER FOR RELIEF

1. That Plaintiffs' Amended Complaint be dismissed with prejudice for failure to state a claim and lack of subject matter jurisdiction;

2. Award Defendants their reasonable attorneys' fees and other costs incurred in this action; and

3. Grant Defendants other relief to which they are entitled.

## COUNTERCLAIM

Defendants, by and through their undersigned counsel, assert this counterclaim against Plaintiffs. Defendants seek treble damages and injunctive relief for Plaintiffs' violation of Section 1 of the Sherman Act (15 U.S.C. § 1). Defendants complain and allege as follows:

### Nature of Case

1. These antitrust claims involve Plaintiffs' illegal agreements with Align, its main competitor in the market for the sale of clear aligners, to foreclose competition, restrain interstate commerce and trade. As detailed in Plaintiffs' Amended Complaint, pursuant to Plaintiffs' Operating Agreements with Align, Align is prohibited from selling its aligners to any "Competing Business." These contractual restraints substantially foreclose Plaintiff's competitors' from

14

access to clear aligners, eliminating and stifling competition, and resulting in harm to consumers and Defendants

2.      By enforcement of the Operating Agreements, in 2019, Plaintiffs forced Align to close all of its retail operations.  Defendant has also taken the position in this litigation, and elsewhere, that the Operating Agreements require Align not to sell clear aligners to any of Plaintiff's competitors, and specifically claims that Align may not sell to Defendant or any similarly-situated sellers of clear aligners.

3.      This Counterclaim seeks to enjoin Plaintiffs' unlawful conduct and to recover treble damages, costs, expenses, as well as attorneys' fees and disbursements, along with such additional and further relief as may be deemed just and proper.

## Jurisdiction, Venue, and Interstate Commerce

4.      This action is brought under Section 1 of the Sherman Act, 15 U.S.C. § 1.

5.      This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 1337 and 15 U.S.C. § 15 and 26.

6.      Venue is proper in this District pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391 because Plaintiffs inhabit, transact business, and reside in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

7.      Plaintiffs and Align manufacture and ship clear aligners across state lines.  As detailed in the Amended Complaint, in addition to their on-line operations, Plaintiffs sell their services and products to consumers in SMILESHOP locations throughout the United States. Plaintiffs also spend several hundred million dollars every year advertising their products and services on national television events such as the Super Bowl, the Grammy Awards, and the NCAA basketball tournament.  To reach even more consumers, Plaintiffs have a sophisticated

social media advertising strategy and spend millions of dollars each year for sponsored advertising on Instagram and Facebook. Plaintiffs' business activities that are the subject of this Counterclaim are within the flow of, and substantially have affected, interstate trade and commerce.

## Overview of the Relevant Market

8. The relevant product market is direct-to-consumer sale of clear aligners. Clear aligners are a series of tight-fitting custom-made, clear mouthpieces made from clear plastic or acrylic material that slip over the teeth. Clear aligners are designed to move teeth a little at a time to correct malocclusion. Unlike traditional braces, clear aligners are transparent and can be easily removed to eat, brush and floss, or engage in social situations. Consumers obtain clear aligners through two main channels: (1) traditional orthodontist or general dentist visits or (2) direct-to-consumer providers such as Plaintiffs. Clear aligners sold direct-to-consumer are generally designed to treat less severe cases of malocclusion using a lower density, substantially cheaper aligner (as much as 60% cheaper) than clear aligners sold through orthodontist and general dentists offices. Clear aligners sold direct-to-consumer are also significantly less expensive than traditional braces, in addition to having the significant advantages over traditional braces of being removable and transparent. Due to these differences, among others, traditional braces and clear aligners sold through orthodontist and general dentists offices are not a reasonable substitutes for direct-to-consumer clear aligners.

9. Upon information and belief, Align and Plaintiffs combine to manufacture over 90% of clear aligners sold in the United States, whether sold through dentist visits or direct-to-consumer.

10.     The relevant geographic market is the United States.  The manufacturing of clear aligners, which are classified as medical devices, is subject to rigorous regulation by government agencies in the United States, including the FD&C Act and its implementing regulations issued by the FDA.  Manufacturers of clear aligners are required to obtain FDA clearance prior to bringing their products to market and are subject to continuing regulation and enforcement by the FDA, which includes routine FDA inspections of facilities to determine compliance with facility registration requirements, product listing requirements, medical device reporting regulations, and quality system regulations.  Clean aligners sold direct-to-consumer are typically shipped directly to the end-purchaser.

## Plaintiffs' Anticompetitive Agreements and Conduct with Align

11.     Align was founded in 1997 and received FDA clearance to market its Invisalign aligner system in 1998.  The Invisalign system provides dental professionals with a range of aligner treatment options.  Align also offers the iTero 3D digital scanning system and services for orthodontic and restorative dentistry. Align is the largest clear aligner manufacturer in the United States producing approximately sixty-six percent (66%) of all aligners sold in the United States.

12.     Plaintiffs were founded in 2014 to operate on a direct-to-consumer model to deliver aligner treatments to consumers at lower costs.

13.     Since their founding, Plaintiffs have grown to over 5,000 employees and were listed on the NASDAQ Composite stock market on September 12, 2019.

14.     In July 2016, Align became Plaintiffs' exclusive third-party supplier for Plaintiffs' clear aligner program.  Align's Invisalign brand and system of clear aligners remained

exclusively available by in office treatment from Invisalign-trained orthodontists and general dentists.

15.     In addition to becoming Plaintiffs' exclusive third-party supplier, Align purchased a 17 percent interest in SDC and became a member of SDC.  Upon information and belief, at that time, Align was required to sign SDC's Operating Agreement.

16.     Upon information and belief, Align's interest in SDC was transferred to SDC Financial and Align was required to sign an Operating Agreement for SDC Financial.

17.     Upon information and belief, the relevant terms of the SDC and SDC Financial Operating Agreements are identical and contain restrictive covenants, which among other things, prevent Align from directly or indirectly:

> (e) Engage in (whether as an owner, proprietor, general or limited partner, member, principal, officer, employee, consultant, director, investor, agent or otherwise), or be employed or contracted by, any Competing Business in the Restricted Territory (whether or not compensated for such services);
>
> *****
>
> A "Competing Business" means: (i) any person or business directly or indirectly engaged in owning, operating, developing, managing or providing administrative, management, marketing or other business services for the remote provision of tooth alignment apparatus or similar businesses pursuant to which the alignment apparatus is delivered by means of a common carrier delivered directly to the customer wearing the apparatus, (ii) any provider of services identical or substantially similar to the services provided by [Plaintiffs] and its Affiliates or in which [Plaintiffs] and its Affiliates engage, and (iii) any business or business opportunity that [Align] knows [Plaintiffs] or its Subsidiaries, Affiliates or Associated PCs to be pursuing or considering at the time of the termination of [Align]'s direct or indirect ownership of Units. … The "Restricted Territory" shall mean the entirety of any state in which [Plaintiffs] does or intends to conduct [Plaintiffs] Business.

18.     In addition to purchasing clear aligners from Align, Plaintiffs have their own manufacturing facilities and, upon information and belief, are now the second-largest

18

manufacturer of clear aligners in the United States, having the capability to manufacture nearly 20 million clear aligners per year.

19.     In 2017, Align began operating its own Invisalign stores and, by 2018, had opened a total of twelve (12) locations.

20.     In April 2018, Plaintiffs initiated arbitration proceedings against Align claiming that Align's Invisalign stores violated the non-compete provisions of the Operating Agreements.

21.     In March 2019, the arbitrator released his decision finding that, among other things, Align breached the non-compete provisions of the Operating Agreement and ordered Align to close its Invisalign stores by April 3, 2019, enjoined Align from opening new Invisalign stores or providing certain services in a physical retail establishment, and extending the non-compete provisions of the Operating Agreements until August 18, 2022.

22.     Upon information and belief, since the arbitrator's decision against Align, in addition to Defendants, Plaintiffs have issued cease and desist letters to numerous independent, non-Align-owned "Invisalign Providers" alleging they have caused Align to violate the non-compete provisions of the Operating Agreements by selling Align's aligners.

23.     While Defendants deny they provide aligners through a direct-to-consumer model, as detailed in the Complaint, Plaintiffs allege that Defendants are a Competing Business under the Operating Agreements.

24.     Currently, Plaintiffs are by far the largest provider of direct-to-consumer clear aligners in the United States claiming to have a 95% share of the direct-to-consumer clear aligner industry.

25.     Plaintiffs no longer use Align as a supplier of aligners, and have not for some time. Instead, Plaintiffs manufacture all of their own clear aligners through Access Dental

Lab, LLC, Plaintiffs' wholly owned subsidiary. There is no reasonable justification for Plaintiff and Align's agreement that Align may not compete with Plaintiff or sell clear aligners to Plaintiff's competitors.

## COUNTERCLAIM ONE
## SHERMAN ACT SECTION 1 VIOLATION
### Per Se Unlawful Agreement Among Competitors To Allocate Markets

26.     Defendants repeat and re-allege the allegations contained in the preceding paragraphs of this Counterclaim and incorporates such paragraphs herein by reference.

27.     At all times relevant to this Counterclaim, Plaintiffs have eliminated competition for clear aligner treatments in the United States. In furtherance of their efforts, Plaintiffs have entered into and enforced illegal non-compete agreements with Align, its largest competitor for the manufacture and sale of clear aligners, and also its competitor with respect to direct-to-consumer sales. These agreements have the purpose and intent of restricting access by Plaintiffs' competitors to clear aligner suppliers, thus reducing output.

28.     The agreements that Plaintiffs have entered, maintained, renewed, and enforced with Align have had the purpose and effect of eliminating competition among providers of clear aligner treatments.

29.     Through these non-compete agreements, Plaintiffs and Align have engaged in *per se* illegal market allocation among competitors, allocating the direct-to-consumer sales channel solely to Plaintiffs. But for these illegal agreements, Align, the manufacturer of two-thirds of the clean aligners sold in the United States, would be selling clear aligners direct-to-consumer and would be supplying other businesses that would sell direct-to-consumer in competition with Plaintiffs, increasing output and reducing prices to consumers.

30.     Plaintiffs' market allocation agreement with Align is not reasonably related to, or reasonably necessary to promote, its supply agreement with Align or the investment by Align. Plaintiffs are a large, well-capitalized company with their own substantial manufacturing capability and has no need to purchase clear aligners from Align, as demonstrated by fact that Plaintiffs have ceased purchasing from Align. Therefore, Plaintiffs' market allocation agreements are *per se* illegal rather than being ancillary restraints subject to the rule of reason.

31.     As a result of these agreements, Defendants' business has been significantly damaged by the pending loss of its sole supplier, Align, and ability to market the SMILESTORE shop as an "Invisalign Provider."  But for the agreements alleged herein, consumers would have greater access to high quality clear aligner treatments at lower costs.

32.     In furtherance of Plaintiffs' agreement to restrain trade, Plaintiffs have committed, among other things, the following overt acts: a) agreeing with Align to prevent it from selling aligners to any business substantially similar to Plaintiffs; b) enforcing the Operating Agreements requiring Align to close its Invisalign stores; and c) seeking to use the arbitration ruling against Align as a vehicle to pursue lawsuits against companies, such as Defendants, that are "Invisalign Providers."

33.     As a direct and proximate result of Plaintiffs' past and continuing violation of Section 1 of the Sherman Act, as well as Plaintiffs' other unlawful conduct, Plaintiffs have suffered injury and damages in an amount to be proven at trial.

34.     Defendants seek money damages from Plaintiffs for these violations. These damages represent the lost and additional patients to whom Plaintiffs would have provided clear aligner treatments in the absence of the violations alleged.  These actual damages should be trebled under Section 4 of the Clayton Act. 15 U.S.C. § 15.

35.     Defendants also seek injunctive relief.  The violations set forth above and the effects thereof are continuing and will continue unless injunctive relief is granted.

## COUNTERCLAIM TWO
## SHERMAN ACT SECTION 1 VIOLATION
### Rule of Reason

36.     Defendants repeat and re-allege the allegations contained in the preceding paragraphs of this Counterclaim and incorporates such paragraphs herein by reference.

37.     In the alternative, to the extent the Court determines Plaintiffs' Operating Agreements with Align are not per se violations of Section 1 of the Sherman Act, the Operating Agreements nonetheless violate Section 1 of the Sherman Act under the Rule of Reason by:

a.   Unreasonably and substantially foreclosing Plaintiffs' competitors from obtaining access to clear aligner manufacturers;

b.   Unreasonably restricting output of clear aligners; and

c.   Depriving consumers of clear aligner treatments the benefits of free and open competition.

38.     But for these illegal market allocation agreements, Align, the manufacturer of two-thirds of the clean aligners sold in the United States, would be selling clear aligners direct-to-consumer and would also be supplying other businesses that would sell direct-to-consumer in competition with Plaintiffs, increasing output and reducing prices to consumers.

39.     Plaintiffs' market allocation agreement with Align is not reasonably related to, or reasonably necessary to promote, their supply agreement with Align or the investment by Align. Plaintiffs are a large, well-capitalized company with their own substantial manufacturing capability and has no need to purchase clear aligners from Align, as demonstrated by fact that Plaintiffs have ceased purchasing from Align.

22

40.     In addition, Plaintiffs' exclusive supply arrangement is unreasonable exclusive dealing.  Through these agreements, Plaintiffs have foreclosed, or have agreed to foreclose, their actual and potential competitors from 90% of the potential supply of clear aligners, driving up costs of clear aligners to consumers and reducing output. These agreements are long term, and Plaintiffs have extended the term substantially beyond when they would have expired under the written terms in the contract. Moreover, there are high barrier to entry regarding the manufacture of clear aligners, for example due to regulatory approval requirements, making it difficult to find alternative suppliers of these products.

41.     Collectively, Plaintiffs and Align enjoy market power over the manufacture of all clear aligners sold in the United States, with a 90% combined market share.

42.     Individually, Plaintiffs alone have market power in the market for the direct-to-consumer sale of clear aligners in the United States.  Plaintiffs claim to have a 95% share of this market.

43.     These agreements have had actual anticompetitive effects, including the closure of Align stores.

44.     The procompetitive benefits, if any, for the Operating Agreements do not outweigh the actual and likely anticompetitive effects of the agreements.

45.     In furtherance of Plaintiffs' agreement to restrain trade, Plaintiffs have committed, among other things, the following overt acts: a) agreeing with Align to prevent it from selling aligners to any business substantially similar to Plaintiffs; b) enforcing the Operating Agreements requiring Align to close its Invisalign stores; and c) seeking to use the arbitration ruling against Align as a vehicle to pursue lawsuits against companies, such as Defendants, that are "Invisalign Providers."

46.     As a direct and proximate result of Plaintiffs' past and continuing violation of Section 1 of the Sherman Act, as well as Plaintiffs' other unlawful conduct, Plaintiffs have suffered injury and damages in an amount to be proven at trial.

47.     Defendants seek money damages from Plaintiffs for these violations. These damages represent the lost and additional patients to whom Plaintiffs would have provided clear aligner treatments in the absence of the violations alleged.  These actual damages should be trebled under Section 4 of the Clayton Act. 15 U.S.C. § 15.

48.     Defendants also seek injunctive relief.  The violations set forth above and the effects thereof are continuing and will continue unless injunctive relief is granted.

### Jury Trial Demand

Defendants demand a trial by jury pursuant to Fed.R.Civ.P. 38(b) of all issues triable of right by jury.

### Prayer for Relief

WHEREFORE, Defendants demand judgment as follows:

a.     Declare null and void the agreements by and between Plaintiffs and Align as described herein as unlawful in violation of Section 1 of the Sherman Act, 15 U.S.C. §1;

b.     Preliminarily and permanently enjoin Defendants from violating Sections 1 of the Sherman Act, 15 U.S.C. § 12;

c.     Award damages in an amount to proven at trial, to be trebled with interest and the costs of this Counterclaim, including attorneys' fees; and

d.     Award such further relief, including structural remedies, as the Court deems just and proper.

Date:  October 25, 2019

/s/ Paige W. Mills
Paige W. Mills (TN Bar No. 016218)
Ryan A. Lee (TN Bar No. 031937)
BASS, BERRY, & SIMS PLC
150 Third Avenue South Suite 2800
Nashville, TN  37201
(615) 742-6200
Email:          pmills@bassberry.com
                   ryan.lee@bassberry.com


*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following:

George H. Cate, III
R. Brandon Bundren
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, TN 37203
gcate@bradley.com
bbundren@bradley.com

James D. Dasso (Admitted *Pro Hac Vice*)
Susan Poll Klaessy (Admitted *Pro Hac Vice*)
Lauren M. Lowe (Admitted *Pro Hac Vice*)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654
jdasso@foley.com
spollklaessy@foley.com
lloew@foley.com

*Attorneys for Plaintiffs*

*/s/ Paige W. Mills*